# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION


TIMOTHY L. JOHNSON,

                Plaintiff,                Civil Action No. 05-71083

                                        District Judge Arthur J. Tarnow

v.                                    Magistrate Judge R. Steven Whalen

OFFICER SADZEWICZ, OFFICER FINCH,
LIEUTENANT MAGULICK, LIEUTENANT BLACK,
T.A. ZAMORA, OFFICER VROMAN, STEVEN CULVER,
PAUL PEPPER,

                Defendants.

_____ /


## REPORT AND RECOMMENDATION

Before the Court is Defendant Sadzewicz's Motion for Summary Judgment [Docket #37], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion be GRANTED, dismissing this case.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, currently held at the Federal Correctional Institution at Milan, Michigan and proceeding in forma pauperis, brings this *Bivens*[1] action against Defendant for violations of

_____

[1]*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388; 91 S.Ct. 1999, 29; L.Ed.2d 619 (1971)

his First, Fifth, and Eighth Amendment rights under the U.S. Constitution. He alleges that

on April 5, 2004, Defendant Sadzewicz confiscated his radio and numerous legal documents

from his cell area and personal locker. *Docket #25* at ¶¶4-5. Plaintiff states that Sadzewicz

then informed him that unless he signed an institutional confiscation form he would be

placed in administrative segregation. *Id*. at ¶7. After signing the confiscation form, Plaintiff

complained to the prison's warden, H.J. Marberry, who told him that he had the right to

pursue his complaints against Sadzewicz through the Bureau of Prisons' ("BOP's") grievance

process. *Id.* ¶at 9. Plaintiff alleges that Sadzewicz, having been informed by another officer

that Plaintiff intended to file a grievance, pre-empted his attempts to complain by falsely

reporting that Plaintiff had created fraudulent legal documents. *Id*. at 12. Plaintiff alleges

that as a result, he was placed in administrative segregation for two weeks. *Id*. at ¶13. He

alleges that after returning to the general prison population, his legal documents, confiscated

in the cell search, were not returned. *Id*. at ¶¶15-16. Plaintiff alleges that two weeks after

his release from administrative segregation, Lt. Black, a former defendant, summoned him

to the investigative office, returning only a portion of his confiscated legal documents. *Id*.

at ¶¶17-18. Plaintiff states that the items seized by the BOP consist of discovery material

pertaining to his original conviction, correspondence from his trial counsel, and research

material gathered in a *pro se* attempt to attack his conviction. *Id*. at 21.[2] He alleges that his

---

[2]Plaintiff does not specify which portions of this material were returned two weeks
after his release from administrative segregation.

documents were seized in an attempt to thwart his ability to proceed with his case. *Id.* at 22.[3]

He requests compensatory damages "for the confiscation and/or loss of his legal documents" as well as punitive damages.

On March 21, 2006, the district court dismissed Defendants Finch, Magulick, Black, Zamora, Vroman, Culver, and Pepper with prejudice, and adopting the undersigned's finding that the "allegation that Sadzewicz retaliated against [Plaintiff] by taking actions leading to his segregation after learning that he intended to file a grievance states a violation of constitutional magnitude." *Docket #24.* Citing Plaintiff's failure to totally exhaust his claims as then required by the Sixth Circuit, the court dismissed Defendant Sadzewicz without prejudice, allowing Plaintiff 21 days to file an amended complaint containing only the retaliation claim against Sadzewicz. *Id.*; *Docket #21* at 15. On April 25, 2006, Plaintiff filed an amended complaint, naming only Sadzewicz. *Docket #25.*

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact.

---

[3]Plaintiff appealed a district court's dismissal of an action seeking a recalculation of his sentence. *Docket #14,* Exhibit A.  In its February 2, 2005 order affirming the dismissal, the Seventh Circuit noted that Plaintiff had already completed  direct and collateral appeals of his original conviction. *Id.*

*Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).  A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### III.  ANALYSIS

**A.  Retaliation**

Defendant Sadzewicz disputes that he arranged for Plaintiff's placement in administrative segregation or withheld the return of confiscated legal documents in retaliation for the grievance issued against him.   Sadzewicz contends that he was informed of the grievance filed against him (April 6, 2004) the day *after* he first reported to Lieutenant Magulick that legal material seized from Plaintiff's cell appeared to refer to "liens against judges and other government officials." *Docket #37*, Exhibit 1 at ¶¶5-6.

Admittedly, Plaintiff has established the first and second prongs of a retaliation claim by showing both that he engaged in  "protected conduct" (filing a grievance) followed by suffering an adverse action (a two-week stint in administrative segregation). *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999).  *See also Herron v. Harrison,* 203 F.3d 410, 415-416 (6th Cir. 2000)("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf," finding futher that "administrative

segregation could deter a person of ordinary firmness from exercising his First Amendment rights." ). However, aside from the temporal proximity between his grievance filing and the assignment to administrative segregation, Plaintiff has failed present evidence that his protected conducted motivated the adverse action. *Thaddeus-X,* at 394.

Defendant has provided evidence showing that the investigation leading to Plaintiff's administrative segregation placement was initiated *before* Defendant Sadzewicz was informed that Plaintiff intended to file a grievance against him. Plaintiff and Defendant agree that Sadewicz conducted a search of Plaintiff's cell on April 5, 2006. *Docket #37*, Exhibit 1 at ¶¶2-3; *Docket #47*, Plaintiff's Affidavit at ¶8. Defendant states that later the same evening, after the search of Plaintiff's cell yielded a radio belonging to another inmate and legal paperwork containing the names of other prisoners, he reported to Lieutenant Magulick that a number of the papers "related to liens against judges and other government officials. . ." *Docket #37*, Exhibit 1 at ¶5. Defendant states further that Magulick advised him to report the discovery "to Lieutenant Black . . . in the Special Investigations Office the following day." *Id.* Defendant states that he was not informed that "Johnson had made a complaint to the warden" about the cell search until the following day (presumably *then* alerting Defendant to the fact that he would be grieved). *Id.* at ¶6. Defendant categorically denies retaliating against Plaintiff, stating further that "he did not make the decision to send Johnson to the Special Housing Unit, nor did I have the authority to make that decision." *Id.* at ¶10. Although Sadzewicz concedes that his first report to Lieutenant Black occurred *after* being informed of Plaintiff's complaints, Sadzewicz had clearly initiated the investigation

leading to the administrative segregation *before* being informed of complaints against him, thus defeating Plaintiff's claim of retaliation, under the third prong of *Thaddeus-X*.

I also disagree with Plaintiff's implied argument that the purported reasons for his administrative segregation placement were pretextual. He premises this argument on the fact that Lieutenant Black's affidavit states that he believed Johnson, contrary to BOP policy, was "running a business" from his cell (*Docket #47*, Plaintiff's Affidavit at ¶17), which stands at odds with Magulick's statement attributing the segregation move to "Johnson possibly placing liens on judges." *Docket #47*, Plaintiff's Affidavit at ¶21.

However, Sadzewicz indicates that he discovered evidence in the cell search suggesting that Plaintiff was both running a business *and* placing liens on the property of government officials. His affidavit states that upon examining the confiscated papers on the day of the cell search, he discovered "some paperwork that appeared to be legal in nature that had names of other inmates on it," stating further that "papers [found] in Johnson's locker related to liens against judges and other government officials." *Docket #37*, Exhibit 1, at ¶¶3, 5. Moreover, Plaintiff's claim that the segregation was motivated by retaliation is undermined by the material accompanying the declaration of Paul Pepper, a BOP Supervisory Attorney. Pepper states that three days prior to Plaintiff's cell search, the United States Attorneys Office in the Southern District of Indiana faxed him a copy of the Indianapolis Star which contained a published notice stating that "Sarah Evans Barker, Major Coleman, Josh Minkler, John Dowd, Diane Ledoux, Jeffrey Avington, Jeffrey A. Baldwin, and Stephen W. Dillon were each obligated to Timothy Johnson for $14,508, 873,600.00 and

were in default." *Docket #37*, Exhibit 5 at ¶¶1-3. Pepper states that he "later discovered that

these persons were individuals involved in Johnson's underlying criminal case." *Id.* at ¶3.

Pepper also confirms that he received 14 pages of material confiscated from Plaintiff's cell,

faxed by Milan staff, containing claims that the above individuals owed Plaintiff

$14,508,873.00 apiece for "breach of contract" damages. *Id.*, Exhibit 5, Attachment B.

Defendant Sadewicz has stated that upon discovering these papers after performing the cell

search, he became "concerned . . . because [he] knew that there was a problem around the

BOP with inmates filing bogus liens against government officials." *Docket #37*, Exhibit 1

at ¶5.

Despite the notice published in the Indianapolis Star, Pepper, after determining that

Plaintiff had actually not filed liens against the above individuals, states that he "informed

staff at FCI Milan that the papers they sent did not include anything that Johnson could not

have, even though there was concern about inappropriate filings against government

officials." *Id.*, Exhibit 5 at ¶4. However, even though BOP staff ultimately determined that

Plaintiff had not filed liens against government officials, Sadzewicz has provided abundant

evidence which shows, given the facts at hand at the time of the cell search, that he behaved

reasonably in commencing an investigation which led to Plaintiff's two-week segregation.

Beyond his own subjective belief, Plaintiff has failed to present any evidence to support his

claim of retaliation.

**B. Access to the Courts**

I also recommend dismissal to the extent that this claim can be construed as a

denial of access to the courts claim. In *Lewis v. Casey*, 518 U.S. 343, 349, 116 S.Ct. 2174, 2179, 135 L.Ed.2d 606 (1996), the Supreme Court held that in order to have standing to bring a claim for denial of access to the courts, the inmate must establish that he suffered prejudice to his case as a result of the alleged denial. Further, "the injury requirement is not satisfied by just any type of frustrated legal claim, but must involve[] attempts by inmates to pursue direct appeals from the convictions for which they were incarcerated," or "actions under 42 U.S.C. § 1983 to vindicate basic constitutional rights." *Id.* at 518 U.S. at 354, 2181-2182 (internal citations omitted).

Plaintiff's amended complaint states generally that the confiscation "effectively" interfered with his "ability to proceed" in "redressing his criminal conviction," stating further that the confiscation "infringed upon his ability to attack his wrongful conviction." *Docket #47* at 13. However, he has not stated how the confiscation actually prejudiced his case. *Docket #25* at ¶22. More obviously, this allegation appears to refer to efforts "to get the attention of the people that were listed in his document" by publishing lien notices (Docket #37, Exhibit 3 at ¶6) rather an inability to file legitimate court pleadings pertaining to direct or collateral appeals or to a civil rights claim as required by *Lewis*.

## IV. CONCLUSION

I recommend, for the reasons stated above, that the motion summary judgment be GRANTED and the Complaint DISMISSED WITH PREJUDICE as to Defendant Sadzewicz.

Any objections to this Report and Recommendation must be filed within ten (10)

days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR

72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of

appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v.*

*Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th

Cir. 1981). Filing of objections which raise some issues but fail to raise others with

specificity will not preserve all the objections a party might have to this Report and

Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit*

*Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich.

LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be not more than twenty (20) pages

in length unless by motion and order such page limit is extended by the court. The response

shall address specifically, and in the same order raised, each issue contained within the

objections.

> s/R. Steven Whalen
> R. STEVEN WHALEN
> UNITED STATES MAGISTRATE JUDGE

Dated: July 26, 2007

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 26, 2007.

s/Susan Jefferson
Case Manager